Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Robert Ahdoot (SBN 172098)
*rahdoot@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310-474-9111
Facsimile:   310-474-8585

John J. Nelson (SBN 317598)
*jnelson@milberg.com*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
280 South Beverly Drive
Beverly Hills, CA 90212
Telephone:  858-209-6941

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEGGY TATUM, individually and on behalf of all others similarly situated, | Case No. 25-cv-7688 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| SALESFORCE, INC., and TRANSUNION, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Peggy Tatum ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class" or "Class members"), by and through her undersigned counsel, brings this class action complaint against Defendants Salesforce, Inc. ("Salesforce") and TransUnion, LLC ("TransUnion") (collectively, "Defendants"). Plaintiff brings these allegations on information and belief, except the allegations specifically pertaining to herself, which are based on her personal knowledge, individually and on behalf of all others similarly situated.

## NATURE OF THE ACTION

1.      Plaintiff brings this class action individually and on behalf of all other individuals who had their sensitive personal information, including, at minimum, names, dates of birth, and/or Social Security numbers (collectively, "Personal Information") disclosed to unauthorized third parties during a data breach compromising Defendants in or around May 2025 (the "Data Breach").

2.      Salesforce is a cloud-based software company providing its services to various corporate clients throughout the country in sales, customer service, marketing automation, e-commerce, analytics, artificial intelligence, and application development.

3.      TransUnion is one of the three American consumer credit reporting agencies.

4.      On August 26, 2025, TransUnion, one of Salesforce's clients, notified Plaintiff and other affected individuals about a "recent[]" Data Breach "involving a third party application serving our U.S. consumer support operations." On information and belief, this database is operated by Salesforce, whose software was repeatedly targeted through compromised customer OAuth tokens, and/or phishing attempts utilizing fake Salesforce apps to obtain victims' login details, compromising the Personal Information of over 4.4 million TransUnion customers.[1]

5.      This is a "hub-and-spoke" data breach case. The "hub" in this case is Salesforce, which is a company that specializes in cloud-storage technologies to warehouse and secure sensitive data, as well as other software products. Salesforce sells its software services to numerous companies, or "spokes," who store information using Salesforce's cloud-based software. These spokes includes TransUnion and

---

[1] Bill Toulas, *TransUnion suffers data breach involving over 4.4 million people*, BLEEPING COMPUTER (Aug. 28, 2025), https://www.bleepingcomputer.com/news/security/transunion-suffers-data-breach-impacting-over-44-million-people/.

CLASS ACTION COMPLAINT

numerous other entities, the names of which are not yet known. All allegations regarding Defendants generally include and apply to both Salesforce and TransUnion.

6.     Though TransUnion represents it "is committed to data privacy and providing a simple and secure process for consumers to manage their personal information[,]"[2] it provides a paltry amount of information concerning the breach on its website and does not position impacted customers to protect themselves against fraud and identity theft.

7.     Defendants were well aware of or should have known of their data security shortcomings. Defendants collect and maintain sensitive Personal Information about their customers and potential customers, including Social Security numbers ("SSNs"), along with other highly sensitive information. Defendants require customers to provide this information in connection with using their services.

8.     Defendants' failures to ensure that their servers and systems were adequately secure fell far short of their obligations and Plaintiff's and Class members' reasonable expectations for data privacy jeopardized the security of Plaintiff's and Class member's Personal Information, and exposed Plaintiff and Class members to fraud and identity theft or the serious risk of fraud and identity theft.

9.     As a result of Defendants' conduct and the resulting Data Breach, Plaintiff and Class members' privacy has been invaded, their Personal Information is now in the hands of criminals, they have either suffered fraud or identity theft, or face an imminent and ongoing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## PARTIES

10.     Plaintiff Peggy Tatum is a California citizen and resident of Contra Costa County, California. Plaintiff had an account with TransUnion. Believing TransUnion and its data vendors, like Salesforce, would implement and maintain reasonable security and practices to protect customer Personal Information, Plaintiff provided Personal Information to TransUnion in connection with seeking credit reporting services from, and transacting with, TransUnion.

11.     Defendant Salesforce, Inc. is a corporation organized under the laws of the state of

---

[2] *Consumer Privacy Rights*, TransUnion, https://www.transunion.com/consumer-privacy (last visited Sept. 9, 2025).

Delaware, with a principal place of business located in San Francisco, California. Salesforce provides a wide range of software products to companies in various industries

12.     Defendant TransUnion, LLC is a limited liability company organized under the laws of Delaware, with its principal place of business located in Chicago, Illinois.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class members, the action is a class action in which one or more Class members are citizens of states different from Defendants.

14.     The Court has personal jurisdiction over Defendants because Salesforce maintains its headquarters and principal places of business in this District and both Defendants conduct significant business in this District, thus availing themselves of California's markets by providing their services therein; they have sufficient minimum contacts with California; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District.

15.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391 because, *inter alia*, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in, were directed to, and/or emanated from this District; Defendants transact substantial business and have agents in this District; a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District; and because Plaintiff and Salesforce reside within this District.

## FACTUAL ALLEGATIONS

### A.     Defendants Collect and Store Personal Information

16.     In providing its software services to businesses, Salesforce routinely collects sensitive Personal Information of its clients' customers and consumers. It asserts on its website that "We earn the trust of our customers, employees, and extended family through transparency, security, compliance, privacy, and performance. And we deliver the industry's most trusted infrastructure."[3] Salesforce is aware of the sensitive nature of the Personal Information it collects, and it acknowledges the importance of data

---

[3] *Trust*, Salesforce, https://trust.salesforce.com/ (last visited Sept. 9, 2025).

privacy. The same is true of TransUnion, who provided their customers' Personal Information to Salesforce.

17.    This information includes, on information and belief, "phone book" information such as names, email addresses, phone numbers, mailing addresses, but also includes highly sensitive information including SSNs, financial information, tax information, credit history, employment information, driver's license information, insurance information, and other highly sensitive information. Some or all of this information is typically provided to a business when a consumer is attempting to secure products and services. As a result, software providers like Salesforce collect and maintain large amounts of highly sensitive Personal Information received and stored through its various business clients.

18.    Salesforce's public-facing statements on privacy and security, much like similar statements made by TransUnion and other spoke companies, make it clear that it is aware of the need to safeguard the sensitive Personal Information entrusted to it by clients and consumers as part of providing its software services.

**B.    <u>The Data Breach</u>**

19.    On August 26, 2025, TransUnion notified affected individuals that "[w]e recently experienced a cyber incident involving a third-party application serving our U.S consumer support operations." On information and belief, the "third-party" referenced by TransUnion as the source of the Data Breach is Salesforce, which has affected numerous other "spoke" businesses who use Salesforce's software and services.

20.    Despite Defendants' duties and commitments to safeguard sensitive and private information, Defendants failed to follow industry-standard practices in securing Plaintiff's and the Class members' Personal Information, as evidenced by the Data Breach.

21.    Google Threat Intelligence Group issued an advisory statement on August 28, 2025 to "alert organizations about a widespread data theft campaign, carried out by the actor tracked as UNC6395." UNC6395 "targeted Salesforce customer instances through compromised OAuth tokens associated with the Salesloft Drift third-party application." UNC6395 "systematically exported large

CLASS ACTION COMPLAINT

volumes of data from numerous corporate Salesforce instances" with the "primary intent" of "harvest[ing] credentials."[4]

### C.    Impact of the Data Breach

22.    The actual extent and scope, and the impact, of the Data Breach on Defendants' customers (or other affiliated persons) remains uncertain. Unfortunately for Plaintiff and Class members, the damage is already done because their sensitive Personal Information is confirmed by TransUnion and other spoke companies to have been disclosed to unauthorized persons during the Data Breach.

23.    Defendants knew or should have known that their IT systems and/or servers are unsecure and do not meet industry standards for protecting highly sensitive customer Personal Information. On information and belief, Defendants failed to timely make changes to their data security systems, privacy policies, and their IT systems and servers, exposing their customers' Personal Information to the risk of theft, identity theft, and fraud.

24.    Some of the harm caused to Plaintiff and Class members by the Data Breach has already been suffered, with additional harm imminent in the wake of the Data Breach.

25.    The Data Breach creates a heightened security concern for Plaintiff and Class members because their SSNs, financial information, and other sensitive information was potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of his SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

26.    Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. Per the United States Attorney General, Social Security numbers "can be an identity thief's most valuable piece of consumer information."[5] TIME quotes data security researcher Tom

---

[4] Austin Larsen et al., *Widespread Data Theft Targets Salesforce Instances via Salesloft Drift*, GOOGLE THREAT INTELLIGENCE GROUP (Aug. 26, 2025; update Aug. 28, 2025), https://cloud.google.com/blog/topics/threat-intelligence/data-theft-salesforce-instances-via-salesloft-drift.
[5] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DEP'T OF JUSTICE, (Sept. 19, 2006), https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html.

Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[6]

27.    In addition, threat actors seek out driver's license numbers because they are highly valuable pieces of personal information. A driver's license number can be a critical part of a fraudulent, synthetic identity, with reports indicating that the going rate for a stolen identity is about $1,200 on the dark web, and that a stolen or forged driver's license, alone, can sell for around $200.[7] Driver's license numbers are particularly useful to identity thieves for applying for unemployment or other government benefits.

28.    Defendants had a duty to keep Plaintiff's and Class members' Personal Information confidential and to protect it from unauthorized disclosures. Plaintiff and Class members provided their Personal Information to Defendants with the understanding that Defendants would comply with their privacy and data security representations and obligations to keep such information confidential and secure from unauthorized disclosures.

29.    Defendants' data security obligations were particularly important given the substantial increase in data breaches in recent years, which are widely known to the public and to anyone in Defendants' industry. In particular, Salesforce's entire business model is based on providing secure cloud-based software to its customers.

**D.    Theft of Personal Information Has Serious Consequences for Victims**

30.    Data breaches are by no means new and they should not be unexpected. Business Insider has noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers. . . . Many of them were caused by flaws in . . . systems either online or in stores."[8] It is well known amongst companies that store sensitive personally identifying information that sensitive Personal Information—like SSNs, financial information, tax information, etc.—is valuable and frequently targeted by criminals.

---

[6] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

[7] Lee Mathews, *Hackers Stole Customers' License Numbers From Geico In Months-Long Breach*, FORBES (Apr. 20, 2021), https://www.forbes.com/sites/leemathews/2021/04/20/hackers-stole-customers-license-numbers-from-geico-in-months-long-breach/?sh=146576a68658.

[8] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

31.     These types of attacks should be anticipated by companies that store sensitive and personally identifying information, like TransUnion, and these companies must ensure that data privacy and security practices and protocols are adequate to protect against and prevent known and expected attacks.

32.     Theft of Personal Information is serious. The Federal Trade Commission has warned consumers that identity thieves use Personal Information to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[9]

33.     Indeed, with access to an individual's Personal Information, criminals can do more than simply empty a victim's bank account. They can also commit all manner of fraud, including: obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and SSN to obtain government benefits; obtain lending or lines of credit; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[10]

34.     According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[11]

---

[9] *See What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER ADVICE, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Sept. 9, 2025).
[10] *See Warning Signs of Identity Theft*, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Jan. 23, 2024).
[11] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN, (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

CLASS ACTION COMPLAINT

35.     Personal Information is a valuable property right.[12] The value of sensitive personal information as a commodity is measurable.[13] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[14]

36.     Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs, financial information, driver's license numbers, and other Personal Information directly on various illegal websites making the information publicly available, often for a price. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

37.     Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

38.     Consumers place a high value on the privacy of sensitive data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[15]

39.     There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three

---

[12] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.
[13] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (April 28, 2014), http://www.medscape.com/viewarticle/824192.
[14] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD ILIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.
[15] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

CLASS ACTION COMPLAINT

months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[16]

40.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Personal Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

41.    Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[17]

42.    It is within this context that Plaintiff and all other Class members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

**E.    Defendants Failed to Act in the Face of a Known Risk of a Data Breach**

43.    Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable (similar) data breaches, Defendants failed to take reasonable steps to adequately protect Personal Information, leaving their customers and clients (and potentially others) exposed to risk of fraud and identity theft.

44.    Defendants are, and at all relevant times have been, aware that the sensitive Personal Information they handle and store is highly sensitive. As companies that require highly sensitive and identifying information in connection with providing their products and services, Defendants are aware of the importance of safeguarding that information and protecting their systems and products from security vulnerabilities.

45.    Defendants were aware, or should have been aware, of regulatory and industry guidance regarding data security, and were alerted to the risk associated with failing to ensure that Personal Information was adequately secured.

---

[16] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.
[17] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.

46.     Despite the well-known risks of hackers and cybersecurity intrusions, Defendants failed to employ (and/or failed to ensure their third-party vendors employed) adequate data security measures or in a meaningful way in order to prevent breaches, including the Data Breach.

47.     The security flaws inherent to Defendants' and their vendors' IT systems or servers run afoul of industry best practices and standards. Had Defendants adequately protected and secured their servers or systems, and the sensitive Personal Information stored therein, Defendants could have prevented the Data Breach.

48.     Despite that Defendants were on notice of the very real possibility of data theft, Defendants permitted a massive intrusion to occur that resulted in disclosure of Plaintiff's and over one million other Class members' Personal Information to criminals.

49.     Defendants permitted Class members' Personal Information to be compromised and disclosed to criminals by failing to take reasonable steps against an obvious threat.

50.     Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[18]

51.     As a result of the events detailed herein, Plaintiff and Class members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Personal Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Personal Information.

52.     Victims of the Data Breach have likely already experienced harms and are subject to an imminent and ongoing risk of harm, including identity theft and fraud.

---

[18] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, REUTERS (May 30, 2017), https://www.reuters.com/article/idUSKBN18M2BY/.

53.     As a result of Defendants' failure to ensure that the impacted systems and servers were protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiff's and Class members' privacy has been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## CLASS ALLEGATIONS

54.     Plaintiff brings this action individually and on behalf of the following Class pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> All residents of the United States who were impacted by the Salesforce Data Breach, including all persons who were sent notice by TransUnion or any other client of Salesforce that their Personal Information was compromised as a result of the Data Breach.

55.     Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court Staff; and (2) Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants, or their parents, have a controlling interest, and their current or former officers and directors.

56.     **Numerosity**: While the precise number of Class members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable, as the proposed Class appears to include over one million members who are geographically dispersed.

57.     **Typicality**: Plaintiff's claims are typical of Class members' claims. Plaintiff and all Class members were injured through Defendants' uniform misconduct, and Plaintiff's claims are identical to the claims of the Class members she seeks to represent. Accordingly, Plaintiff's claims are typical of Class members' claims.

58.     **Adequacy**: Plaintiff's interests are aligned with the Class Plaintiff seeks to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously. The Class's interests are well-represented by Plaintiff and undersigned counsel.

59.     **Superiority**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class member's claims. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class members individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

60.     **Commonality and Predominance:** The following questions common to all Class members predominate over any potential questions affecting individual Class members:

- whether Defendants engaged in the wrongful conduct alleged herein;
- whether Defendants' data security practices resulted in the disclosure of Plaintiff's and other Class members' Personal Information and the Data Breach;
- whether Defendants violated privacy rights and invaded Plaintiff's and Class members' privacy; and
- whether Plaintiff and Class members are entitled to damages, equitable relief, or other relief and, if so, in what amount.

61.     Given that Defendants engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

62.     **Injunctive and Declaratory Relief:** Consistent with Fed. R. Civ. P. 23(b)(2), Defendants, through their conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the class as a whole.

CLASS ACTION COMPLAINT

## CAUSES OF ACTION

### COUNT I
**Negligence**

63.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

64.     Defendants were entrusted with, stored, and otherwise had access to the Personal Information of Plaintiff and Class members.

65.     Defendants knew, or should have known, of the risks inherent to storing the Personal Information of Plaintiff and Class members, and to not ensuring that their or their vendors' servers and systems, and the Personal Information, were secure. These risks were reasonably foreseeable to Defendants.

66.     Defendants owed duties of care to Plaintiff and Class members whose Personal Information had been entrusted to them.

67.     Defendants breached their duties to Plaintiff and Class members by failing to provide fair, reasonable, or adequate data security. Defendants had a duty to safeguard Plaintiff's and Class members' Personal Information and to ensure that they adequately protected Personal Information. Defendants breached this duty.

68.     Defendants' duty of care arises from their knowledge that their customers entrust them with highly sensitive Personal Information that Defendants are required to, and represent that they will, handle it securely. Indeed, Defendants commit to data privacy on their websites and privacy notices, including safeguarding sensitive Personal Information.

69.     Only Defendants were in a position to ensure that their and their vendor's systems, servers, and services were sufficient to protect against breaches and the harms that Plaintiff and Class members have now suffered.

70.     A "special relationship" exists between Defendants, on the one hand, and Plaintiff and Class members, on the other hand. Defendants entered into a "special relationship" with Plaintiff and Class members by agreeing to accept, store, and have access to sensitive Personal Information provided by Plaintiff and Class members in connection with their attempts or efforts to obtain Defendants' products and services.

71.     But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and

1   Class members, Plaintiff and Class members would not have been injured.

2       72.     Defendants acted with wanton disregard for the security of Plaintiff's and Class members'

3   Personal Information.

4       73.     The injury and harm suffered by Plaintiff and Class members was the reasonably

5   foreseeable result of Defendants' breach of duties. Defendants knew or should have known it was failing

6   to meet these duties, and that Defendants' breach would cause Plaintiff and Class members to experience

7   the foreseeable harms associated with the exposure of their Personal Information.

8       74.     As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class

9   members have been harmed and face an imminent and ongoing risk of harm.

10      75.     As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class

11  members have suffered injury and are entitled to damages in an amount to be proven at trial.

12                              **COUNT II**
                            **Negligence Per Se**
13

14      76.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

15      77.     Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), Defendants had a duty to

16  provide adequate data security practices in connection with safeguarding Plaintiff's and Class members'

17  Personal Information.

18      78.     Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45), Defendants had a duty to

19  provide adequate data security practices to safeguard Plaintiff's and Class members' Personal Information.

20      79.     Defendants breached their duties to Plaintiff and Class members under the Federal Trade

21  Commission Act (15 U.S.C. § 45), the Gramm-Leach-Bliley Act (15 U.S.C. §§ 6801, *et seq.*) ("GLBA"),

22  the California Customer Records Act (Civ. Code § 1798.80, *et seq.*) ("CCRA"), and the California

23  Consumer Privacy Act (Civ. Code § 1798.150, *et seq.*) ("CCPA"), among other statutes, by failing to

24  provide fair, reasonable, or adequate data security in connection with the sale of products and services in

25  order to safeguard Plaintiff's and Class members' Personal Information.

26      80.     Defendants' failure to comply with applicable laws and regulations constitutes negligence

27  per se.

28

81.    But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

82.    The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendants' breach of duties. Defendants knew or should have known that they were failing to meet their duties, and that a breach would cause Plaintiff and Class members to experience the foreseeable harms associated with the exposure of their Personal Information.

83.    As a direct and proximate result of Defendants' negligence per se, Plaintiff and Class members have been harmed and face an imminent and ongoing risk of harm.

84.    As a direct and proximate result of Defendants' negligence per se, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III
### Breach of Implied Contract

85.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

86.    Defendants provided or provides products and services to Plaintiff and Class members, or Plaintiff and Class members provided their Personal Information to Defendants as prospective customers or in some other capacity.

87.    In connection with their business relationship, Plaintiff and Class members entered into implied contracts with Defendants.

88.    Pursuant to these implied contracts, Plaintiff and Class members provided Defendants with their Personal Information. In exchange, Defendants agreed, among other things: (1) to take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' Personal Information; and (2) to protect Plaintiff's and Class members' Personal Information in compliance with federal and state laws and regulations and industry standards.

89.    The protection of Personal Information was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and Defendants, on the other hand. Had Plaintiff and Class members known that Defendants would not adequately protect their customers' Personal Information they would not have done business with Defendants.

90.     Plaintiff and Class members performed their obligations under the implied contract when they provided Defendants with their Personal Information.

91.     Necessarily implicit in the agreements between Plaintiff/Class members and Defendants was Defendants' obligation to take reasonable steps to secure and safeguard Plaintiff's and Class members' Personal Information.

92.     Defendants breached their obligations under their implied contracts with Plaintiff and Class members by failing to implement and maintain reasonable security measures to protect their Personal Information.

93.     Defendants' breach of their obligations of their implied contracts with Plaintiff and Class members directly resulted in the Data Breach.

94.     The damages sustained by Plaintiff and Class members as described above were the direct and proximate result of Defendants' material breaches of their agreements.

95.     Plaintiff and other Class members were damaged by Defendants' breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Personal Information was improperly disclosed to unauthorized individuals; (iv)  the confidentiality of their Personal Information has been breached; (v) they were deprived of the value of their Personal Information, for which there is a well-established national and international market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the effects of the breach, including the increased risks of identity theft they face and will continue to face.

## COUNT IV
### Breach of Fiduciary Duty

96.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

97.     A relationship existed between Plaintiff and Class members and Defendants in which Plaintiff and Class members put their trust in Defendants to protect the Personal Information of Plaintiff and Class members and Defendants accepted that trust.

-16-

98.     Defendants breached the fiduciary duties that they owed to Plaintiff and Class members by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing to protect the Personal Information of Plaintiff and Class members.

99.     Defendants' breach of fiduciary duty was a legal cause of damage to Plaintiff and Class members.

100.    But for Defendants' breach of fiduciary duty, the damage to Plaintiff and Class members would not have occurred.

101.    Defendants' breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and Class members.

102.    As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff is entitled to and demand actual, consequential, and nominal damages, and injunctive relief.

## COUNT V
### Invasion of Privacy (Intrusion Upon Seclusion)

103.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

104.    Plaintiff and Class members had a reasonable expectation of privacy in the Personal Information that Defendants disclosed without authorization.

105.    By failing to keep Plaintiff's and Class members' Personal Information safe, knowingly employing inadequate data privacy policies and protocols, and disclosing Personal Information to unauthorized parties for unauthorized use, Defendants unlawfully invaded Plaintiff's and Class members' privacy by, *inter alia*:

    a.     intruding into Plaintiff's and Class members' private affairs in a manner that would be highly offensive to a reasonable person; and

    b.     invading Plaintiff's and Class members' privacy by improperly using their Personal Information properly obtained for a specific purpose for another purpose, or disclosing it to some third party;

    c.     failing to adequately secure Personal Information from disclosure to unauthorized persons;

-17-

d.    enabling the disclosure of Plaintiff's and Class members' Personal Information without consent.

106.    Defendants knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class members' position would consider their actions highly offensive.

107.    Defendants knew that their IT systems and servers were vulnerable to data breaches prior to the Data Breach.

108.    Defendants invaded Plaintiff's and Class members' right to privacy and intruded into Plaintiff's and Class members' private affairs by disclosing their Personal Information to unauthorized persons without their informed, voluntary, affirmative, and clear consent.

109.    As a proximate result of such unauthorized disclosures, Plaintiff's and Class members' reasonable expectations of privacy in their Personal Information was unduly frustrated and thwarted. Defendants' conduct amounted to a serious invasion of Plaintiff's and Class members' protected privacy interests.

110.    In failing to protect Plaintiff's and Class members' Personal Information, and in disclosing Plaintiff's and Class members' Personal Information, Defendants acted with malice and oppression and in conscious disregard of Plaintiff's and Class members' rights to have such information kept confidential and private.

111.    Plaintiff seeks injunctive relief on behalf of the Class, restitution, and all other damages available under this Count.

**COUNT VI**
**Unjust Enrichment**

112.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

113.    This claim is pleaded in the alternative to the implied contract claim.

114.    Defendants have profited and benefited from the monies or fees paid and the Personal Information provided by Plaintiff and Class members to receive services from Defendants.

115.    Defendants have voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiff and

CLASS ACTION COMPLAINT

Class members did not receive services of the quality, nature, fitness, or value represented by Defendants and that reasonable consumers expected.

116.     Defendants have been unjustly enriched by their withholding of and retention of these benefits, at the expense of Plaintiff and Class members.

117.     Equity and justice militate against permitting Defendants to retain these profits and benefits.

118.     Plaintiff and Class members suffered injury as a direct and proximate result of Defendants' unjust enrichment and seek an order directing Defendants to disgorge these benefits and pay restitution to Plaintiff and Class members.

**COUNT VII**
**Violations of the California Unfair Competition Law,**
**Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL")**

119.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

120.     Defendants' conduct constitutes unfair, illegal, and fraudulent business practices within the meaning of the California Business & Professions Code § 17200, *et seq.* (the "UCL").

121.     Defendants' conduct violated certain laws as alleged herein, including the Federal Trade Commission Act (15 U.S.C. § 45), the Gramm-Leach-Bliley Act (15 U.S.C. §§ 6801, *et seq.*) ("GLBA"), the California Customer Records Act (Civ. Code § 1798.80, *et seq.*) ("CCRA"), and the California Consumer Privacy Act (Civ. Code § 1798.150, *et seq.*) ("CCPA"). By engaging in the said conduct in the course of doing business within California, Defendants engaged in unlawful business practices in violation of the UCL as to Plaintiff and all Class members.

122.     By engaging in the above-described conduct in the course of doing business, Defendants engaged in unfair business practices in violation of the UCL because the harm to Plaintiff and Class Members outweighed any utility that Defendants' conduct may have produced.

123.     Defendants' failure to disclose information concerning the Data Breach directly and promptly to affected customers constitutes a fraudulent act or practice in violation of the UCL. Defendants' failure to adequately protect Plaintiff's and Class members' Personal Information, despite assurances they would do so and that Defendants met industry standards for data security, also constitutes

1    a fraudulent act or practice in violation of the UCL.

2         124.   Plaintiff and Class Members suffered injury in fact as a result of Defendants' conduct.

3         125.   Individually and on behalf of the Class, Plaintiff seeks injunctive relief, restitution, and all

4    other damages available under this cause of action.

5                                     **COUNT VIII**
6                      **Invasion of Privacy, Cal. Const. ART. 1 § 1**

7         126.   Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

8         127.   California established the right to privacy in Article I, Section 1 of the California

9    Constitution.

10        128.   Plaintiff and the Class had a legitimate expectation of privacy to their Personal Information

11   and were entitled to the protection of this information against disclosure to unauthorized third parties.

12        129.   Defendants owed a duty to their customers, including Plaintiff and the Class, to keep their

13   Personal Information contained as a part thereof, confidential.

14        130.   Defendants failed to protect and released to unknown and unauthorized third parties the

15   Personal Information of Plaintiff and the Class.

16        131.   Defendants allowed unauthorized and unknown third parties access to and examination of

17   the Personal Information of Plaintiff and the Class, by way of Defendants' failure to protect the Personal

18   Information.

19        132.   The unauthorized release to, custody of, and examination by unauthorized third parties of

20   the Personal Information of Plaintiff and the Class is highly offensive to a reasonable person.

21        133.   The intrusion was into a place or thing, which was private and is entitled to be private.

22   Plaintiff and the Class disclosed their Personal Information to Defendants as part of services provided by

23   Defendants, but privately with an intention that the Personal Information would be kept confidential and

24   would be protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief

25   that such information would be kept private and would not be disclosed without their authorization.

26        134.   The Data Breach at the hands of Defendants constitutes an intentional interference with

27   Plaintiff's and the Class's interest in solitude or seclusion, either as to their persons or as to their private

28   affairs or concerns, of a kind that would be highly offensive to a reasonable person.

135.    Defendants acted with a knowing state of mind when they permitted the Data Breach to occur because they were with actual knowledge that their information security practices were inadequate and insufficient.

136.    Because Defendants acted with a knowing state of mind, they had notice of the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and the Class.

137.    As a proximate result of the above acts and omissions of Defendants, the Personal Information of Plaintiff and the Class was disclosed to third parties without authorization, causing Plaintiff and the Class to suffer damages.

138.    Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class in that the Personal Information maintained by Defendants can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and the Class have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class.

### COUNT IX
### Violations of the California Customer Records Act,
### Civ. Code § 1798.80, *et seq.*

139.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

140.    "[T]o ensure that personal information about California residents is protected," the California legislature enacted Civil Code section 1798.81.5, which requires that any business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

141.    Each Defendant is a "business" within the meaning of Civil Code § 1798.80(a).

142.    Plaintiff and Class members are "customers" within the meaning of Civil Code § 1798.80(c).

143.    The Data Breach constituted a "breach of the security system" of Defendants, within the meaning of Civil Code § 1798.82(g).

144.    The Personal Information taken in the Data Breach fits within the definition of "Personal information" in Civil Code section 1798.80.

-21-

145.    Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

146.    Defendants failed to dispose of Plaintiff's Personal Information after it no longer was needed for Defendants' services, allowing that Personal Information to be compromised in the Data Breach and violating Civil Code section 1798.81.

147.    Section 1798.82 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay . . . ."

148.    Defendants unreasonably delayed informing anyone about the Breach after Defendants knew the Breach had occurred. Defendants waited over two months after becoming aware that attackers had gained access to Plaintiff's and Class members' Personal Information before beginning the process of notifying individuals of the Data Breach.

149.    Defendants unreasonably delayed and failed to disclose to Plaintiff and Class members, in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, Personal Information when Defendants knew or reasonably believed such information had been compromised.

150.    Upon information and belief, no law enforcement agency instructed Defendants that notification to Class members would impede investigation.

151.    As a result of Defendants' violation of Cal. Civ. Code § 1798.82, Plaintiff and Class members were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff and Class members because their stolen information would have had less value to identity thieves.

152.    As a result of Defendants' violation of Cal. Civ. Code § 1798.82, Plaintiff and Class members suffered incrementally increased damages separate and distinct from those simply caused by the

1   Data Breach itself.

2       153.    Plaintiff and Class members seek all remedies available under Cal. Civ. Code § 1798.84,

3   including, but not limited to the damages suffered by Plaintiff and Class members as alleged above and

4   equitable and injunctive relief.

5       154.    Defendants' misconduct as alleged herein is fraud under Cal. Civ. Code § 3294(c)(3) in

6   that it was deceit or concealment of a material fact known to the Defendants conducted with the intent on

7   the part of Defendants of depriving Plaintiff and Class members of "legal rights or otherwise causing

8   injury." In addition, Defendants' misconduct as alleged herein is malice or oppression under Cal. Civ.

9   Code § 3294(c)(1) and (c)(2) in that it was despicable conduct carried on by Defendants with a willful and

10  conscious disregard of the rights or safety of Plaintiff and Class members and despicable conduct that has

11  subjected Plaintiff and Class members to hardship in conscious disregard of their rights. As a result,

12  Plaintiff and Class members are entitled to punitive damages against Defendants under Cal. Civ. Code §

13  3294(a).

14                           **COUNT X**
                **Violations of the California Consumer Privacy Act,**
15                   **Civ. Code § 1798.150, *et seq.***

16      155.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

17      156.    The CCPA, Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations

18  of the CCPA. Section 1798.150(a) specifically provides: any consumer whose nonencrypted and

19  nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of

20  Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of

21  the business's violation of the duty to implement and maintain reasonable security procedures and

22  practices appropriate to the nature of the information to protect the personal information may institute a

23  civil action for any of the following: (A) To recover damages in an amount not less than one hundred

24  dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual

25  damages, whichever is greater; (B) Injunctive or declaratory relief; (C) Any other relief the court deems

26  proper.

27      157.    Each Defendant is a "business" under § 1798.140(d) in that they are a corporation

28  organized for profit or financial benefit of their shareholders or other owners, with indeterminate gross

-23-

CLASS ACTION COMPLAINT

revenue.

158.    Plaintiff and Class members are covered "consumers" under § 1798.140(i) in that they are natural persons, whose records were maintained in California, by a California based entity, and on California-based servers.

159.    The personal information of Plaintiff and Class members at issue in this lawsuit constitutes "personal information" under § 1798.150(a) and 1798.81.5.

160.    Defendants knew or should have known that their data security systems and practices were inadequate to safeguard the Plaintiff's and Class members' Personal Information and that the risk of a data breach or theft was highly likely. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the Personal Information of Plaintiff and Class members. Specifically, Defendants subjected Plaintiff's and Class members' Personal Information to an unauthorized access and exfiltration, theft, or disclosure as a result of Defendants' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

161.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class members were injured and lost money or property, including but not limited to the loss of Plaintiff's and Class members' legally protected interest in the confidentiality and privacy of their Personal Information, and additional losses described herein.

162.    No notice shall be required prior to an individual consumer initiating an action solely for actual pecuniary damages. *See* Section 1798.150(b). Accordingly, Plaintiff and Class members seek actual pecuniary damages suffered as a result of Defendants' violations described herein. Plaintiff will issue a notice of these alleged violations pursuant to § 1798.150(b) and intends to amend this complaint to seek statutory damages upon expiration of the cure period pursuant to § 1798(a)(1)(A)(B), (a)(2), and (b).

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of the Class, by and through undersigned counsel, respectfully requests that the Court grant the following relief:

A.    Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as class representative and undersigned counsel as class counsel;

B.    Award Plaintiff and Class members actual and statutory damages, punitive damages, and monetary damages to the maximum extent allowable;

C.    Award declaratory and injunctive relief as permitted by law or equity to assure that Class members have an effective remedy, including enjoining Defendants from continuing the unlawful practices as set forth above;

D.    Award Plaintiff and Class members pre-judgment and post-judgment interest to the maximum extent allowable;

E.    Award Plaintiff and Class members reasonable attorneys' fees, costs, and expenses, as allowable; and

F.    Award Plaintiff and Class members such other favorable relief as allowable under law or at equity.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  September 9, 2025                    Respectfully submitted,

                                             /s/ Tina Wolfson
                                             Tina Wolfson (SBN 174806)
                                             Robert Ahdoot (SBN 172098)
                                             **AHDOOT & WOLFSON, PC**
                                             2600 W. Olive Avenue, Suite 500
                                             Burbank, CA 91505-4521
                                             Telephone:  310.474.9111
                                             Facsimile:   310.474.8585
                                             twolfson@ahdootwolfson.com
                                             rahdoot@ahdootwolfson.com

                                             Bradley K. King (SBN 274399)
                                             **AHDOOT & WOLFSON, PC**
                                             521 Fifth Avenue, 17th Floor
                                             New York, NY 10175
                                             Telephone:  917.336.0171
                                             Facsimile:   917.336.0177
                                             bking@ahdootwolfson.com

                                             John J. Nelson (SBN 317598)
                                             **MILBERG COLEMAN BRYSON**
                                             **PHILLIPS GROSSMAN PLLC**
                                             280 South Beverly Drive

CLASS ACTION COMPLAINT

1

Beverly Hills, CA 90212
Telephone:  858.209.6941

2

Gary M. Klinger (*pro hac vice* forthcoming)

3

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**

4

227 W. Monroe Street, Suite 2100
Chicago, IL 60606

5

Telephone: 866.252.0878
gklinger@milberg.com

6

*Attorneys for Plaintiff and the Proposed Class*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT